CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for Roanoke
FEB 21 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LEE JOYNER, | ) | Civil Action No. 7:13-cv-00227 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WALTER SWINEY, <u>et al.</u>, | ) | By:   Hon. Jackson L. Kiser |
|     Defendants. | ) |        Senior United States District Judge |

Christopher Lee Joyner, a Virginia inmate proceeding pro se, filed a verified Amended Complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1331 and § 1343. Plaintiff names as defendants Walter Swiney, Steven Franklin, Travis McCoy, Paul Payne, and Daniel McCowan,[1] who are all correctional officers at the Red Onion State Prison ("ROSP"). Plaintiff alleges that Defendants violated the Eighth Amendment of the United States Constitution by using excessive force, not preventing others' use of excessive force, and delaying necessary medical treatment. Defendants filed a motion for summary judgment, to which Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I deny Defendants' motion for summary judgment because disputes of material facts exist and a trial is necessary for all claims.

I.

This matter depends on contrasting versions of events about when Defendants entered Plaintiff's cell on March 18, 2013. Defendants aver that they never used physical force on Plaintiff while he was in five-point restraints for disruptive behavior, but Plaintiff avers that the Defendants mercilessly beat him while he was restrained.[2]

---

[1] I grant Defendants' request to correctly spell McCowan's name on the docket, which was incorrectly spelled in the Complaint as "McGowan."

[2] "Five-point restraints" secure an inmate face-up on a bed by strapping the chest and each arm and leg to the bed.

**A.**

Plaintiff alleges that on March 18, 2013, at approximately 3:28 p.m., Payne, Franklin, and McCoy entered Plaintiff's cell while Swiney waited at the cell door as a "lookout." Although Plaintiff was strapped to a bed by five-point restraints, Franklin punched Plaintiff four times in the stomach, and Payne punched Plaintiff twice in the stomach and four times to the head. McCoy, who had been holding a t-shirt over Plaintiff's mouth to silence him, switched roles with Payne, stomped on Plaintiff's genitals four times, and punched Plaintiff's face four times before everyone left the cell. Plaintiff asked correctional officers working after the shift changed at 6:00 p.m. for medical assistance to no avail. McCowan eventually stopped at Plaintiff's door, saw Plaintiff's swollen face, and asked Plaintiff about who he had fought. Plaintiff replied, "You should know," and asked for medical assistance, but McCowan refused to help "if McCoy had anything to do with [the] [injuries]."

**B.**

In contrast, Defendants explain that on March 17, 2013, Plaintiff refused orders to close his tray slot and to uncover his cell-door window. Plaintiff also refused multiple orders to cuff-up, stating, "F__ you, I'm going to tear this f__ing cell apart," "F__ it, I'm gonna get you right now," and "Y'all coming up in here today." Plaintiff finally complied after receiving two bursts of pepper spray, and staff decontaminated him and placed him in ambulatory restraints.

On March 18, 2013, at about 12:10 a.m., staff saw that Plaintiff had damaged the left handcuff of his ambulatory restraints, removed the damaged ambulatory restraint, and placed Plaintiff in five-point restraints. At about 1:00 p.m., staff saw that Plaintiff had freed his left hand from the restraint and smeared or threw feces on his cell-door window. Staff managed to secure Plaintiff in five-point restraints despite Plaintiff intending to spit feces at them.

At about 3:21 p.m., Swiney stood at Plaintiff's cell door while Franklin, McCoy, and Payne entered the cell with a shield to give Plaintiff a meal and restroom break. Due to Plaintiff's prior attempts to spit at staff, Payne held the shield above Plaintiff's face for protection, and McCoy used a cloth to cover the spit and feces in the cell. Franklin, McCoy, Payne, and Swiney exited the cell at about 3:23 p.m. after Plaintiff threatened them when asked if he wanted to be released from five-point restraints. Franklin, McCoy, Payne, and Swiney aver that they did not assault Plaintiff, did not touch Plaintiff or his restraints, and did not try to harm him. Although McCowan recalls talking to Plaintiff during his rounds that evening, McCowan denies that Plaintiff asked him for medical treatment at that time and denies saying he would not request medical staff if McCoy had anything to do with a need for treatment.

On March 19, 2013, at about 4:00 a.m., Plaintiff was released from five-point restraints because he stopped being disruptive. A nurse examined Plaintiff, did not find any distress or trauma, and, thus, did not note any injuries in Plaintiff's medical record. Although Plaintiff complained of pain in his right-pelvis, no swelling or discoloration was noted, and Plaintiff did not say he was assaulted or felt pain while moving. Plaintiff's' medical record does not indicate that Plaintiff sustained physical injuries from the alleged beating.

Plaintiff did not claim to be beaten until March 22, 2013, when he alleged in a grievance that staff caused his face to swell by beating him while in five-point restraints. The ROSP Institutional Investigator watched a video recording of Plaintiff's release from five-point restraints and did not see any injury to Plaintiff.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact.

Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

Defendants argue that they are entitled to summary judgment because Plaintiff provides only a "conclusory allegation" of excessive force. However, Plaintiff's allegations are based on his personal experiences and are provided via a verified Amended Complaint and an affidavit, which specifically describe how one officer observed three officers pummel him while immobile and defenseless in five-point restraints and that another officer later acknowledged Plaintiff's injuries and verbally refused to obtain medical assistance. Furthermore, I am constrained to view the facts, and all inferences drawn therefrom, in Plaintiff's favor, and I cannot weigh the parties' credibility. With these rules in mind, I must find that disputes of material facts preclude summary judgment.

4

A.

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. Whitley v. Albers, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response show. Id. at 321; see, e.g., Wilkins v. Gaddy, 559 U.S. 34 (2010).

Viewing the evidence in the light most favorable to Plaintiff, the force allegedly used by Franklin, McCoy, and Payne was malicious and sadistic and for the very purpose of causing harm. Even if Plaintiff had been combative and problematic before 3:21 p.m. on March 18, 2013, no one alleges that he was disruptive when Franklin, McCoy, and Payne initially entered the cell. Furthermore, Plaintiff was defenseless in five-point restraints when Franklin, McCoy, and Payne allegedly pummeled his face, stomach, and genitals while gagging him to keep him silent. Clearly, the alleged evidence points to the absence of such a need for the application of such force or a legitimate basis for the amount of force allegedly used.

Plaintiff avers that he lay strapped in five-point restraints with a swollen face as a result of eight defenseless blows to the face.[3] See Anderson, 477 U.S. at 255 (requiring the evidence of the

---

[3] Although prior law in this circuit would have focused the dispositive inquiry on the significance of Plaintiff's alleged injury, settled law at the time of the alleged beating reiterated that the extent of injury was not dispositive and was but one of four factors to be considered. Compare Norman v. Taylor, 25 F.3d 1259 (1994) (en banc) (finding a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis), with Wilkins, 130 S. Ct. at

5

non-movant for summary judgment to be believed and all justifiable inferences are to be drawn in his favor). The alleged injury of a swollen face was caused by physical force lacking any penological justification. See, e.g., Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998) (recognizing that an inmate's injuries sustained while guards quelled a disturbance are constitutionally distinct from an inmate's injuries sustained from guards deliberately inflicting punishment due to a verbal argument). Furthermore, the pain inflicted on a defenseless, immobile, and peaceful inmate, regardless of lasting physical injury, can be properly considered as the injury. See Hudson v. McMillian, 503 U.S. 1, 13-14 (1992) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' e.g., injury that requires medical attention or leaves permanent marks. Indeed, were we to hold to the contrary, we might place various kinds of state-sponsored torture and abuse – of the kind ingeniously designed to cause pain but without a telltale 'significant injury' – entirely beyond the pale of the Constitution.") (Blackmun, J., concurring). Moreover, the officers' alleged beating of a peaceful inmate in five-point restraints while smothering him with a shirt constitutes conduct "repugnant to the conscious of mankind." See id. at 10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"); see also Wilkins, 559 U.S. at 36 ("When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident."). As such, I am constrained to find that Plaintiff alleges sufficient facts to state the violation of the

---

1179 (rejecting the reasoning of Norman and reasserting that a significant injury is not a threshold requirement for stating an excessive force claim and is but one factor to consider); see Hill v. Crum, 727 F.3d 312 (4th Cir. 2013) (extending qualified immunity to officers in the Fourth Circuit who had allegedly beat inmates without causing more than de minimis injury before Norman was abrogated).

Eighth Amendment right to be free from excessive force, which was clearly established by the time of the alleged beating. Given the divergence of Plaintiff's and Defendants' versions of events, the disputes of material facts must be resolved by trial and not by summary judgment.

**B.**

Plaintiff alleges that Swiney stood in the doorway of Plaintiff's cell, observed the beating, and did nothing to stop it. Defendants construed the claim as alleging supervisory liability, arguing that Plaintiff failed to describe a supervisory relationship between Swiney and Franklin, McCoy, and Payne. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (describing a claim of supervisory liability under § 1983). Defendants are correct in this regard, and so I do not find that a claim of supervisory liability applies. Instead, the claim is liberally construed as alleging bystander liability. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (permitting liberal construction of pro se pleadings when justice requires). A correctional officer may be liable on a theory of bystander liability if the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002). Plaintiff's allegations about Swiney standing in the doorway during the beating satisfies these elements, and this cause of action was clearly established before March 2013. See id. However, because Plaintiff must prove a violation of a constitutional right as a prerequisite to establishing bystander liability, Willis v. Oakes, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007), this claim, too, must be resolved by trial.

**C.**

Plaintiff alleges that McCowan was deliberately indifferent to Plaintiff's serious medical needs when McCowan allegedly recognized Plaintiff's physical injuries after the beating and refused to call for medical assistance. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104 (1976).

Again, viewing the facts and inferences in a light most favorable to Plaintiff, McCowan was personally aware of facts indicating a substantial risk of serious harm when he saw Plaintiff's injured, swollen face and asked Plaintiff who had he fought to sustain the injuries. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (noting a serious medical need occurs when, inter alia, it is obvious to a lay person that medical assistance is needed). McCowan allegedly exhibited deliberate indifference by intentionally refusing to call medical assistance because McCoy caused the injuries, which was clearly-established unlawful conduct before March 2013. See, e.g., Estelle, supra. Like the excessive force claim, a dispute of material facts exists whether Plaintiff demonstrated a serious physical need and whether McCowan was deliberately indifferent to that need.

### III.

For the foregoing reasons, I correct McCowan's name on the docket and deny Defendants' motion for summary judgment. Because no party has made a jury demand, this matter will be set for a bench trial.

ENTER: This 21st day of February, 2014.

Jackson L. Kiser
Senior United States District Judge